UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CODY MATTHEWS, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NO. 21-1862 |
| WILLIAM LO, ET AL. | * | SECTION "I" (2) |

**REPORT AND RECOMMENDATION**

Plaintiffs Cody Matthews and Frank W. Beckendorf, III filed this complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 alleging excessive force, medical indifference, violation of medical privacy and inadequate nutrition against several Defendants, including Dr. William Lo, Dr. J. Ham, Captain Aaron Mendow, Deputy Jacob Spohrer, Deputy Mason Martinez, Deputy Boyet, Corporal J. Smith, Warden Daniel Fleischman, Sheriff Randy Smith, and Sergeant Cabbin. ECF Nos. 1, at 4; ECF Nos. 5, 6. Defendants filed an Answer on May 6, 2022. ECF No. 22. This matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); E.D. La. L.R. 73.2(A). Also pending before the Magistrate Judge on referral is Defendants Jose Ham and William Lo's Motion to Dismiss. ECF No. 18.

Having considered the record, including the complaint, § 1983 Fact Statements, *Spears* hearing testimony, and the applicable law, the undersigned recommends that Plaintiffs Matthews' and Beckendorf's claims regarding violation of medical privacy and lack of nutrition, as well as Plaintiff Matthews' claim of medical indifference, be DISMISSED WITH PREJUDICE, but that Plaintiff Matthews' claims of excessive force occurring on March 23–25, 2021 and August 26, 2021, be allowed to proceed. It is further recommended that Defendants Ham and Lo's Motion to Dismiss be GRANTED.

I.      **BACKGROUND**

   A. **Plaintiff Cody Matthews' Claims**

Cody Matthews and Frank W. Beckendorf, III, two pretrial detainees housed at St. Tammany Parish Jail, filed this § 1983 suit alleging that each of them had experienced a medical doctor visit during which their privacy was violated and that the food at St. Tammany Parish Jail lacks the proper nutrition.  ECF No. 1, at 4–6.  Plaintiff Matthews also alleges two incidents of excessive force occurring on March 23–25, 2021 and August 26, 2021, as well as lack of medical care and stolen property following same.  In his Fact Response Statement, Plaintiff Matthews names as Defendants Dr. William Lo, Dr. Jose Ham, Warden Daniel Fleischman, Sheriff Randy Smith, Deputy Daniel Boyet, Deputy Jacob Spohrer, Deputy Mason Martinez, Corporal Aaron Mendow, Deputy Adrian Brumfield, Sergeant Dussouy, Corporal J. Smith, and Sergeant Cabbin. ECF No. 11, at 1.

Plaintiff Matthews alleges that on October 29, 2020, he had a mental health doctor's appointment by video with Dr. William Lo, and that during his appointment, he was required to sit on a bench in St. Tammany Parish Jail and participate in the doctor's visit in front of other inmates and guards.  ECF No. 1, at 4; ECF No. 11, at 1.  Plaintiff Matthews alleges that the inmates and guards were within "earshot" of the conversation between him and Dr. Lo in which they discussed his current medication.  ECF No. 1, at 4.  Dr. Lo also spoke freely about Plaintiff's medications and medical condition.  *Id.*  Plaintiff Matthews stated he filed a grievance regarding this medical visit, to which Dr. Ham, Warden Fleischman, and Michael Sevante (counsel for Randy Smith) responded and ultimately deemed unfounded.  *Id.*

Some time on March 23–25, 2021, Plaintiff Matthews alleges he was placed on a bench in handcuffs while a search of his housing unit occurred.  ECF No. 1, at 5.  He claims that after two

hours of sitting on the bench and after all other detainees were brought back into their cells, he asked to go back into his housing unit which request was denied by Sgt. Cabbin. *Id.* When Plaintiff asked why his request was denied, Sgt. Cabbin and four other deputies grabbed him and tazed him while he was still in handcuffs. *Id.*; *see also* ECF No. 11, at 1. Sgt. Cabbin tightened his handcuffs which caused Plaintiff's hands to begin to turn purple. ECF No. 1, at 5. Plaintiff Matthews called for help several times before another deputy loosened the handcuffs. *Id.* Plaintiff remained on the bench for three more hours before deputies moved him to another bench for an additional hour before returning him to his cell. *Id.*; ECF No. 11, at 1 (stating he was on the bench for five hours). As a result of being handcuffed, Plaintiff Matthews states that he has experienced permanent nerve damage for his hand and wrist. ECF No. 1, at 5. He submitted a grievance which he says was ignored by Corporal J. Smith who is the first responding officer for non-medical grievance forms. *Id.* Plaintiff also alleges that deputies discarded his personal phone numbers and pictures during the search of the housing units. *Id.*

On August 26, 2021, when another search was occurring in Plaintiff's dorm at C-100, Plaintiff alleges he was targeted as deputies asked him to place his hands above his head and leave them there until they finished. ECF No. 1, at 5. Plaintiff states when he attempted to explain to the deputies that he suffers from a shoulder injury and cannot maintain that position for an extended period of time, several deputies escorted him into the hallway where they handcuffed Plaintiff. *Id.* These deputies included Corporal Aaron Mendow, Deputy Jacob Spohrer, Deputy Mason Martinez, and Deputy Daniel Boyet. *Id.* Plaintiff Matthews alleges that he complied with being handcuffed, but the deputies "hyperextended" his arms and shoulders while "forcing him down the hallway." *Id.* at 5–6. He then complied with their orders to place his knees on a bench, but soon after, they further hyperextended his arms which caused Plaintiff to exclaim that the officers

3

were hurting him to which Deputy Boyet responded with "vulgar insults" including "I'm the smallest in the group and I'm hurting you like a b****!" *Id.* at 6. The deputies then slammed Plaintiff onto his stomach on the ground and removed his clothes until his genitals were exposed. *Id.* The guards then left him on the bench for eleven hours. *Id.* Plaintiff claims this experience was a sexual assault, but he did not file a PREA report out of fear for being targeted. *Id.* After this incident, Plaintiff states he experiences "excruciating" pain in his shoulder on a daily basis and has submitted requests for medical care regarding his shoulder but has not been seen. *Id.*; ECF No. 11, at 2. Plaintiff also states that deputies discarded his wedding ring, but he received a receipt at a later date on August 31, 2021. *Id.*

Plaintiff also claims that the nutrition at the St. Tammany Parish Jail does not provide adequate vitamins, minerals, or fiber to nourish the inmates. ECF No. 1, at 6. He states a local dietician has incorporated vitamin supplements in the inmates' daily diets, but these supplements are only provided every other week and placed in large piles on the tables rather than being passed out to every inmate. *Id.*

Plaintiff seeks $3 million for physical injuries, mental anguish, and PTSD-like symptoms. ECF No. 1, at 7. Plaintiff also seeks injunctive relief to restrict negative influence on Plaintiffs' criminal cases and to restrict further physical retaliation from deputies. *Id.* He writes he is seeking "PREA report issued on offended officers," and a temporary restraining order issued against St. Tammany Parish Sheriff's Office.[1] He additionally seeks emergency medical treatment for his shoulder pain. *Id.*

Plaintiff Matthews attached a grievance response dated November 17, 2020 and response from Sheriff Randy Smith dated December 21, 2020, both finding his grievance on the October

---

[1] Honorable Lance Africk adopted the undersigned's Report and Recommendation denying Plaintiffs' Motion for Temporary Restraining Order. ECF No. 14.

29, 2020 medical visit to be unfounded.  ECF No. 1, at 8–9.  Plaintiff also attached a response to a grievance he filed regarding the August 2021 excessive force claim.  *Id.* at 11.  Responding officer Sgt. Dussouy writes that "Inmate Matthews refused to comply with all deputies orders and became verbally and physically combative towards deputies.  Inmate Matthews not only physically resisted deputies but would also threaten their lives along with the threatening to throw urine, spit, and feces on deputies . . . ."  *Id.*  Additionally, Sgt. Dussouy explains that the wedding ring is contraband, and Deputies took the wedding ring during the incident and gave Plaintiff Matthews a receipt.  *Id.*  Plaintiff also attached a grievance response from Warden Fleischman dated September 27, 2021 which indicates that a disciplinary hearing against Plaintiff regarding the August 2021 incident was pending.  *Id.* at 12.  As to medical care after that incident, the Warden wrote that a nurse provided care on 9/14/21 after which Plaintiff was provided medication for 7 days and told to follow-up if additional care was needed.  *Id.*

### B.  *Spears* **Hearing Testimony of Plaintiff Matthews**

During the *Spears* hearing, Matthews explained that he named Dr. Lo and Dr. Ham in connection with his medical privacy claim.  He stated that although medical visits normally occur in a medical room with the doctor, he had a medical visit with Dr. Lo that occurred via telehealth.  For this telehealth visit, Matthews testified that he was placed on a bench in a hallway where two inmates stood nearby who were preparing lunch trays.  Matthews stated he felt uncomfortable as Dr. Lo spoke freely about his medical conditions and the inmates and deputy in the hall could hear when they were speaking.  Matthews was unaware of the reason he could not see the doctor in a

medical room.  He did not ask any officer to be moved.  Matthews also named Dr. Ham as he is the head doctor at St. Tammany Parish Jail and thus, oversees the medical staff and care.

Matthews also alleged medical indifference against Dr. Ham for the delay he received in his medical care.  He stated that on several occasions the medical care he received was significantly delayed after he filed forms requesting care.  After the March 2021 incident, Plaintiff Matthews filed multiple forms requesting care for his wrists and did not have his wrists addressed until he was seen after the August 2021 incident.  He stated he filled out forms after the August 2021 incident as he had a "messed up" rotator cuff and the August 2021 incident injured that shoulder, but it took two months for him to receive any care.  He was eventually seen in a medical visit where he was told that he had a pinched nerve, was given ibuprofen, and later had an x-ray ordered. Despite receiving some care, Matthews claimed the two-month delay after he requested care was unacceptable.  During his medical visit regarding his August 2021 injury, his wrist injuries from the March 2021 incident were also addressed, and Matthews stated he had no further issues with his wrists.  Matthews said he had no other sick call forms that have not been addressed.

As to his claims regarding nutrition, Matthews fails to specify how his meals were nutritionally deficient or what injury he sustained as a result of same.  Further, during his *Spears* hearing, he confirmed that St. Tammany's menu changes have resolved his complaints and that he does not wish to pursue a nutrition claim any longer.

Matthews described the March and August excessive force incidents which mostly repeat his previous filings.  As to the March 2021 incident, Matthews stated that there was a search being conducted of cells, and inmates whose cells were being searched were taken out and handcuffed. When it was Matthews' turn, he stated that he was the only inmate that was handcuffed to a bench. He stated the search only took about thirty-minutes, however, he remained handcuffed to the bench

for two hours even after all the other inmates had been returned to their cells. During that time, he was allowed to use the restroom. At some point, Matthews asked if he could be placed back in his cell and was told he had to stay on the bench. Officers told him to give them his handcuffed hands so they could then handcuff him again to the bench, however, Matthews responded that he would not give them his hands, that he wanted to speak to rank, and wanted to know why he was remaining cuffed to the bench when all the other inmates had been returned to their cells. At this point, three or four guards grabbed him and tazed him on the chest. They tightened the handcuffs so tight that Matthews stated his hands started to turn purple and left him handcuffed to the bench awhile longer. Matthews testified he was not fighting with them when they grabbed his hands and tazed him. He estimated it was about three hours from the time he was removed from his cell to when he was returned. He filled out sick forms for his wrists, and as he stated earlier, his wrists were not evaluated until he was seen by medical after the August 2021 incident. At the time of the *Spears* hearing, his stated wrists were ok. He wrote multiple grievances regarding the March 2021 incident, including a complaint, grievance, and supplemental grievance. He stated he did not receive responses. Matthews does not know why he was left on the bench for so much longer than other inmates. He also stated that during the search, the facility took personal photos and artwork.

As to the August 2021 Incident, Matthews stated that there was a dorm shakedown where everyone was instructed to sit up in bed as inmates were strip searched and placed aside to sit. When it was his turn, the officers placed his left hand on his head and told him to place the other hand on his head, however, Matthews told the officers that he had a messed-up rotator cuff from a previous injury and could not place his shoulder any higher. He said they handcuffed him behind his back and proceeded to walk him to a different area. Although he was willingly walking, Matthews stated he was slammed into a door and pushed "excessively" through it. At some point

7

after he was handcuffed, Deputies Boyet and Spohrer took his arms and yanked them up to bend him over. He testified that he told them they were hurting him by doing this. The Deputies took him to a bench where he willingly put his knees on the bench. However, at some point after and even though Matthews claims he was not fighting with them, the Deputies pushed him up against the wall and brought his arms up again. Matthews communicated again that they were really hurting him. He said Officer Spohrer responded, "I'm the smallest one out of the bunch and I'm handling you like a little b****." Matthews testified they kept "jacking" his arms up before they placed him on the bench. Matthews stated he attempted to give them his hands, but then they slammed him on the ground with his hands behind his back, and pulled his pants below his waist, then sat him back on bench after putting his boxers back on. Matthews stated he was not groped during this incident, and only Deputies Boyet and Spohrer physically handled him.

When another sergeant later passed, he allowed Matthews to take his handcuffs off to put his pants back on. Matthews then remained handcuffed sitting on the bench for what he estimates was eight to ten hours after which he was placed in restrictive housing unit where he received no mattress or anything for over 24 hours. While he was on the bench, he was allowed to use the restroom once and received a sandwich. When he returned to his cell, Matthews stated he received a receipt for his wedding ring which they took as contraband.

Matthews named Dr. William Lo as the doctor who saw him for the telehealth visit. Matthews named Dr. Jose Ham as the head of the medical department at St. Tammany Parish Jail. He named Sheriff Randy Smith as through his role as Sheriff, is in charge of all the officers at the jail. Warden Daniel Fleischman was named for his position as Warden and for denying Matthews' grievances. Neither had any personal interaction with Matthews. Deputies Daniel Boyet and Jacob Spohrer were named for excessive force used in handling Matthews during the August 2021

incident.  While Matthews does not know who exactly pulled his pants down, he only stated that Deputies Boyet and Spohrer physically touched him, and Deputy Boyet was the individual who slammed him to the ground.  Deputy Mason Martinez was named because he was present when Deputies Boyet and Spohrer slammed Matthews to the ground and pulled his pants off.  Corporal Aaron Mendow was named as he was the supervising Corporal on the day the August 2021 incident occurred and apparently was present at some point when Matthews was on the bench.  Matthews stated Corporal J. Smith may have had something to do with grievances Matthews filed.  Sgt. Cabbin was the individual who tazed Matthews during the March 2021 incident.  Sgt. Dussouy allegedly made the decision to leave Matthews on the bench for the eight to ten hours.  Finally, Deputy Adrian Brumfield was the officer who brought Matthews his receipt for his wedding ring and was also present at the August 2021 incident.

### C.  **Plaintiff Frank W. Beckendorf III's Claims**

In his Fact Response Statement, Plaintiff Beckendorf listed as defendants Dr. William Lo, Dr. Jose Ham, Warden Daniel Fleischman, Sheriff Randy Smith, and Corporal J. Smith.  ECF No. 10, at 1.  Plaintiff Beckdendorf alleges that two psychiatrist appointments were conducted in areas of the jail that were not private, and non-medical personnel were present, as well as claim that the diet at St. Tammany Parish Jail is inadequate.  *Id.*  On May 15, 2021, Plaintiff Beckendorf recounted a medical visit with Dr. Lo in front of the medical bay in which deputies and an inmate worker were present.  ECF No. 1, at 4.  Plaintiff Beckendorf refused to participate in the medical visit as the jail staff was not following regulations regarding medical confidentiality.  *Id.* at 5.

In support of his nutrition claim, Plaintiff Beckendorf attached responses from Corporal Smith and Sheriff Smith to a grievance Beckendorf filed about nutrition.  ECF No. 1, at 13–15.

### D. **Defendants Dr. Jose Ham and Dr. William Lo's Motion to Dismiss**

Defendants argue that Plaintiffs' claims should be dismissed for failure to exhaust administrative remedies under the Prison Litigation Reform Act. ECF No. 18-1, at 4–5. Additionally, that Plaintiffs' claims against Dr. Ham must be dismissed as the Complaint is entirely devoid of any facts pertaining to him. *Id.* at 5. Defendants also state that, as inmates do not have an absolute constitutional right to the privacy of their medical records, the fact that an inmate was escorted to an appointment by an officer who remained nearby is not a constitutional violation in fact. *Id.* at 5. Defendants Ham and Lo also state that Plaintiffs did not demonstrate any deliberate indifference and intentionally disclose any medical information, and the grievance responses cite that health staff and corrections personnel took extra precautions to promote conversation. *Id.* at 5–6.

## II.  **LEGAL STANDARDS**

### A. **Statutorily Required Screening**

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[2] A prisoner's *in forma pauperis* complaint may be dismissed *sua sponte* at any time if the court determines that the complaint is frivolous or malicious or fails to state a claim on which relief may be granted.[3] A claim is frivolous if it "lacks an arguable basis in law or fact."[4] A claim lacks an arguable basis in law if it is "'based on an indisputably meritless legal theory, such as if the

---

[2] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998).
[3] 28 U.S.C. § 1915(e)(2)(B)(i)–(ii); 42 U.S.C. § 1997e(c)(1); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).
[4] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

complaint alleges the violation of a legal interest which clearly does not exist.'"[5]    A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[6]    A court may not dismiss a claim simply because the facts are "unlikely."[7]    A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[8]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and Fed. R. Civ. P. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim which is dismissed under one rule does not "invariably run afoul" of the other.[9]    If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[10]    "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[11]

## B.  The *Spears* Hearing

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[12]    The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges

---

[5] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

[6] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (citation omitted).

[7] *Id.*

[8] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[9] *See also Moore*, 976 F.2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d) (current version at 28 U.S.C. § 1915(e))).

[10] *Id.*

[11] *Id.*

[12] *Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).

occurred and the legal basis of the claims.[13]  "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[14]  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e).[15]  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[16]

The court may make only limited credibility determinations in a *Spears* hearing, and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.[17]  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a *Spears* hearing."[18]  Medical records of sick calls, examinations, diagnoses, and medications may, however, rebut allegations of deliberate indifference.[19]

### C.  **12(b)(6) Motions to Dismiss**

The Supreme Court clarified the standard for a Rule 12(b) motion in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face (i.e., the factual allegations must "be enough to raise a right to relief above the speculative level").[20]  It is not enough to allege facts consistent with a claim because the allegations must move

---

[13] Id.

[14] *Davis v. Scott*, 157 F.3d 1003, 1005–06 (1998).

[15] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990) (citation omitted).

[16] *Spears*, 766 F.2d at 182.

[17] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992); *Wilson*, 926 F.2d at 482).

[18] *Id.* (citing *Wilson*, 926 F.2d at 482; *Williams v. Luna*, 909 F.2d 121, 124 (5th Cir. 1990)).

[19] *Gobert v. Caldwell*, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Bejaran v. Cruz*, 79 F. App'x 73, 74 (5th Cir. 2003))).

[20] *Twombly*, 550 U.S. at 555.

past possibility and to plausibility of "entitlement to relief."[21]  If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[22]

Although the court must accept all well-pleaded facts as true and consider the complaint in the light most favorable to the plaintiff, the court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[23]  The court may consider not only the allegations but also any documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice.[24] When an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the allegation) controls.[25]

The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court."[26]  When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile.[27]  A court in its discretion may deny a

---

[21] *Id*. at 557-58; *Iqbal*, 556 U.S. at 678.

[22] *Id*. at 678.

[23] *Ferrer v. Chevron Corp.*, 484 F. 3d 776, 780 (5th Cir. 2007) (quotation omitted); *Gentilello v. Rege*, 627 F. 3d 540, 544 (5th Cir. 2010) (same) (citations omitted); s*ee also SGK Props., L.L.C. v. U.S. Bank Natl. Assn. for Lehman Bros. Small Balance Comm. Mortg. Pass-Through Certificates, Series 2007-3*, 881 F. 3d 933, 944–45 (5th Cir. 2018) (conclusory fraud allegations that the defendant intended plaintiff to act upon representations and plaintiff acted in reliance on representations insufficient to withstand Rule 12(b)(6) challenge).

[24] *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Wolcott v. Sebelius*, 635 F. 3d 757, 763 (5th Cir. 2011) (court may consider complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice).

[25] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F. 3d 370, 377 (5th Cir. 2004).

[26] *Pervasive Software Inc. v. Lexware GMBH & Co.*, 688 F. 3d 214, 232 (5th Cir. 2012).

[27] *See Carroll v. Fort James Corp.*, 470 F. 3d 1171, 1175 (5th Cir. 2006) (Rule 15(a) "evinces a bias in favor of granting leave to amend"); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F. 3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").

motion to amend for futility if the amended complaint would fail to state a claim upon which relief could be granted.[28]

## III.    LAW AND ANALYSIS

### A.    Required Elements of § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[29]

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[30]  Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[31]  A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;

(2) that occurred under color of state law; and

(3) was caused by a state actor.[32]

To hold a defendant personally liable under § 1983, a plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights

---

[28] *Villarreal v. Wells Fargo Bank, N.A.*, 814 F. 3d 763, 766 (5th Cir. 2016).
[29] 42 U.S.C. § 1983.
[30] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).
[31] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[32] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

or that a causal connection exists between an act of the [defendant] and the alleged constitutional violation."[33]

In assessing *pro se* complaints, the Court liberally construes a *pro se* plaintiff's pleadings and considers the complaint and attachments,[34] as well as supplemental filings in performing the frivolous review and determining a 12(b)(6) motion.[35]

### B. <u>Sheriff Smith, Warden Fleischman, Dr. Jose Ham, and Corporal Aaron Mendow</u>

Matthews named Sheriff Smith and Warden Fleischman as supervisors of the officers involved in the March and August 2021 incidents, and thus, he alleges, responsible for these incidents. Additionally, Corporal Aaron Mendow was named for being the supervising corporal during the August 2021 incident. Dr. Ham was named as the supervising physician over medical care at the jail. Plaintiff Matthews did not allege the necessary personal involvement of any of these four defendants. At most, Plaintiff asserted that Corporal Mendow may have been present at some point while he was on the bench or while he was taken into the hallway in the August 2021 incident, but he did not allege that Corporal Mendow was present during any physical altercation.

An individual defendant can only be liable under § 1983 if he was "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation."[36] Without an allegation of personal involvement, a supervisory official, like a sheriff or warden, cannot be held liable pursuant to § 1983 simply because an employee or subordinate allegedly violated the plaintiff's constitutional

---

[33] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006).
[34] *Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005) (finding plaintiff had stated a claim for age and race discrimination when looking at his EEOC attachments).
[35] *Id.* (citing *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983) (stating that lower court was required to look beyond inmates' formal complaint and to consider as amendments to the complaint those materials subsequently filed)).
[36] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981) (per curiam) (citing *Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980)).

rights.[37]  A plaintiff must instead establish that he suffered a constitutional violation or physical injury directly resulting from an order, policy, or directive implemented by the sheriff to create vicarious liability under § 1983.[38]

Matthews confirmed during the *Spears* hearing that he had no personal contact with Sheriff Smith, Warden Fleischman, or Dr. Ham, and that he only named them as supervisors or as the people in charge of other officers.  As to Corporal Mendow, while Matthews stated he may have been present at some point while Matthews was on the bench during the August 2021 incident or when he was escorted into the hallway out of his cell, Matthews did not allege that Corporal Mendow had any personal involvement or witnessed any of the hyperextension of arms or slamming on door or ground.  As none of these Defendants is alleged to have had any personal involvement in the allegations and Matthews has not alleged any policy that they implemented, no plausible § 1983 claim exists against Sheriff Smith, Warden Fleischman, Dr. Ham or Corporal Mendow.  Accordingly, the claims against them should be dismissed.

### C.  Excessive Force Claims relating to March 2021 and August 2021 Incidents

Plaintiff alleges excessive force on two separation occasions: some time on March 23–25, 2021 ("March 2021 Incident") where he was handcuffed to a bench during a search and while handcuffed, he was tazed and had his handcuffs tightened until they caused him pain, and later on August 26, 2021[39] ("August 2021 Incident") when he alleges that he had his arms hyperextended

---

[37] *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) (citations omitted); *see also Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citation omitted) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

[38] *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).

[39] While Plaintiff Matthews characterizes this event as both a sexual assault and excessive force, in liberally construing his pleading the Court addresses this incident as only an excessive force claim.  Matthews confirmed during the *Spears* hearing that his boxers were placed back on him when he was placed on the bench, and he never stated that anyone inappropriately touched him.

while handcuffed at least twice and was brought to the floor, stripped and exposed by Deputies Boyet and Spohrer while others watched.  Plaintiff claims this second incident has caused daily shoulder pain for which he eventually saw a doctor who told him he had a pinched nerve and prescribed ibuprofen.  Matthews also stated during his Spears that an x-ray was ordered.

As a pretrial detainee, Plaintiff Matthews' claims of excessive force fall under his substantive due process rights under the Fourteenth Amendment.[40]  Force against a pretrial detainee is "excessive" and a violation of the Fourteenth Amendment when the force was objectively unreasonable.[41]  Several factors shed light on the reasonableness or unreasonableness of the force used: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to tempt or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."[42]  The Court is to look only to the objective reasonableness of the force without regard to underlying intent or motivation.[43]  "[A] pretrial detainee can prevail by providing only objective evidence that the challenged

---

[40] *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) ("The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment.") (citing *Bell v. Wolfish*, 441 U.S. 520 (1979) (stating the State must distinguish between a pretrial detainee and convicted felon as the State cannot punish a pretrial detainee)).

[41] *Fairchild v. Coryell Cnty.*, No. 20-50237, 2022 WL 2733704, at *2 (5th Cir. July 14, 2022) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–70 (2015)).  In *Kingsley v. Hendrickson*, 576 U.S. 389, 396–98 (2015), the Court concluded that the pretrial detainee need only show the force was "objectively reasonable," and expressly rejected the subjective standard used for convicted prisoners, *i.e.* that the plaintiff must prove that the use of force was not applied in good faith effort to maintain or restore discipline but, rather, was applied maliciously and sadistically to cause harm.  *Andrew v. St. Tammany Par.*, No. 15-2105, 2016 WL 447680, at *7 (E.D. La. Jan. 15, 2016) (Wilkinson, M.J.) (citing *Brown v. Gusman*, No. 15-1491, 2015 WL 6827260, at *3–4 (E.D. La. Nov. 6, 2015)), *R. & R. adopted* 2016 WL 430455 (E.D. La. Feb. 4, 2016).  *Kingsley* stated "the language of the [Eighth Amendment's Cruel and Unusual Punishment Clause and Fourteenth Amendment's Due Process Clause] differs, and the nature of the claims often differs.  And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'"  *Kingsley*, 576 U.S. at 359–401 (citing *Ingraham v. Wright*, 430 U.S. 651, 671 – 72 (1977); *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[42] *Kingsley*, 576 U.S. at 397.

[43] *Gonzalez v. Seal*, No. 13-34, 2013 WL 6244183, at *8 (E.D. La. Dec. 3, 2013) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."[44]

In the context of excessive force inquiry under the *Eighth* Amendment, which is relevant here,[45] the use of excessive physical force against a prisoner may constitute cruel and unusual punishment, or in this case may violate the Fourteenth Amendment, when the inmate does not suffer serious injury.[46] "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[47] Rather, a district court should consider the injury as "only one facet of a broader inquiry."[48] The extent of the injury suffered "may suggest whether the use of force [applied] could plausibly have been thought necessary in a particular situation" or may indicate the amount of force applied.[49]

Matthews' factual allegations must be accepted as true for present screening purposes. His factual allegations for the March 2021 Incident and the August 2021 Incident involve force applied - tazer or hyperextension of arms as well as being "pushed" to ground and stripped, respectively – while Matthews was handcuffed and according to him, not physically resisting.[50] Although the

---

[44] *Kingsley*, 576 U.S. at 398 (citing *Bell v. Wolfish*, 441 U.S. 520, 540 (1979); *Block v. Rutherford*, 468 U.S. 576, 585–86 (1984)); *see also Andrew*, 2016 WL 447680, at *8 (citing *Thompson v. Beasley*, 309 F.R.D. 236, 247 (N.D. Miss. 2015)) (discussing that while *Kingsley* used the disjunctive "or," courts post-*Kingsley* have framed the inquiry as "whether, from an objective point of view [defendant's] actions were rationally related to a legitimate, nonpunitive governmental purpose *and* whether his actions were excessive in relation to that purpose.")

[45] *Andrew*, 2016 WL 447680, at *10 ("Thus, the Fifth Circuit's prior cases that relied on *Hudson* continue to provide binding legal standards for this court in applying the *Kingsley* standard to Fourteenth Amendment claims.").

[46] *Id.* (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37–39 (2010) ("The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it.")); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' *e.g.*, injury that requires medical attention or leaves permanent marks.").

[47] *McGuffey v. Blackwell*, 784 F. App'x 240, 243 (5th Cir. 2019) (internal quotations omitted) (quoting *Wilkins*, 559 U.S. at 38).

[48] *Id.*

[49] *Wilkins*, 559 U.S. at 37 (internal quotations and citations omitted).

[50] *See Fennell v. Quintela*, 393 F. App'x 150, 155 ("A defendant's use of force against a plaintiff is excessive and clearly unreasonable if the plaintiff posed no threat and the force was not used in a 'good-faith effort to maintain or restore discipline.'") (citing *Hudson*, 503 U.S. at 7; *Clark v. Gonzalez*, No. 96-41146, 1997 WL 681275, at *2–3

grievance responses attached to his complaint present a factually different situation for the August 2021 Incident (i.e., indicating that Matthews was verbally threatening guards), Matthews does not address this allegation and instead pleads that the force was applied after he was handcuffed and that he did not resist throughout the August 2021 events.  "[I]t is clear that the use of force is permissible in a variety of situations, not only when it is necessary to protect oneself from an imminent physical attack by an inmate . . . [but also] when necessary to control a 'recalcitrant inmate.'"[51]    While the grievance responses demonstrate that Matthews may have been "recalcitrant" during the August 2021 Incident, these responses are not the results of a disciplinary hearing[52] and are an account from the deputies of the incident with Matthews.  Therefore, in considering the Court's duty at this time to liberally construe Matthews' complaint, to view the complaint most favorably to plaintiff, and to take the well-pleaded facts as true, the Court cannot

---

(5th Cir. Oct. 23, 1997) (holding that slamming a prisoner into walls was an excessive use of force when the prisoner was handcuffed and did nothing to provoke the officers); *Carrington v. City of Lufkin*, No. 94-40139, 1994 WL 500481, at *2 (5th Cir. Aug. 31, 1994) (finding that banging a person's head into a car and dropping them to the ground when they posed no threat would be an "objectively unreasonable use of force clearly excessive to the need.")); *Kron v. LeBlanc*, No. 11-2263, 2012 WL 4563957, at * (E.D. La. Oct. 1, 2012) (citing *Fennell*, 393 F. App'x at 152 (holding that if proven, plaintiff's version of events could allow a reasonable jury to find officer's used excessive force when plaintiff alleged prison officer grabbed wrists while handcuffed and twisted them); *Watts v. Smart*, 328 F. App'x 291, 292, 293–94 (5th Cir. 2009) (stating prisoner's evidence that defendants struck him without provocation while he was in restraints "gives rise to genuine fact issues as to whether the force [officers] applied was excessive and whether their conduct was objectively reasonable."); *Morris v. Trevino*, 301 F. App'x 310, 313 (5th Cir. 2008) (taking prisoner's allegations as true and finding that the force alleged was disproportionate to the amount of force necessary to maintain to restore order when the officer twisted the prisoner's arms into painful positions when his hands were handcuffed, yanked his hands through the tray slot, beat and punched his arms, and punched his face.")); *see also Bourne v. Gunnels*, 921 F.3d 484, 492 (5th Cir. 2019) (finding that plaintiff presented genuine dispute of material fact – whether force employed after he was restrained on the cell floor was in good faith or maliciously and sadistically applied).

[51] *Brown v. Gusman*, No. 15-1491, 2015 WL 6827260, at *5 (E.D. La. Nov. 6, 2015) (citing *Jones v. Shields*, 207 F.3d 491, 496) (8th Cir. 2000); *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996); *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1980)).

[52] *But see Andrew*, 2016 WL 447680, at *10 (holding that after considering defendant officer's actions as rationally related to a legitimate, nonpunitive governmental purpose of maintaining order and discipline when the Court had evidence that plaintiff had been disciplined for not complying with directives, also finding that the physical force applied was light and minimal, with whole incident lasting only one and one-half minutes, and as confirmed by medical records, resulted in no injuries).

at this time view his excessive force claim on August 2021 as frivolous as Matthews has pled specific facts as to how force was applied repeatedly while he was handcuffed and not resisting.

While Matthews' injury from the March 2021 incident has apparently healed, the incident involved a tazer used on a pretrial detainee handcuffed and sitting down. Additionally, Matthews has sustained an injury following the August 2021 incident and stated that he was diagnosed with a pinched nerve, has daily pain, and is awaiting an x-ray. Considering the use of force applied while he was handcuffed in March 2021 and August 2021, as well as the alleged injury from the August 2021 incident, Matthews has pled sufficient facts to plausibly state claims of excessive force.

These claims should remain only against the Defendants that Matthews alleged were personally involved or bystanders[53] in the excessive force, i.e. Sgt. Cabbin as the individual who tazed Matthews during the March 2021 incident, Deputies Daniel Boyet and Jacob Spohrer who were the only two defendants Matthews alleged physically touched him during the August 2021 incident, and Deputy Martinez who was allegedly present and failed to intervene during the August 2021 incident.

### D. Conditions of Confinement and Medical Care Claims

Plaintiff Matthews has claimed that he received inadequate medical care due to the delay in care, violation of his medical privacy during a telehealth visit, inadequate nutrition, and at one point, as he stated during the *Spears* hearing, he was placed in a cell for 24 hours without a mattress or anything. Plaintiff Beckendorf also claims inadequate nutrition and violation of his medical privacy during a telehealth visit which prompted him to refuse to attend another medical visit. In

---

[53] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted) ("[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.").

their pleadings, Plaintiff Matthews and Beckendorf did not allege that they were deprived food or how the food is alleged to be nutritionally deficient, only their conclusion that the food does not contain proper fiber, vitamins, or nutrition. In his *Spears* hearing, Plaintiff Matthews testified that St. Tammany Parish Jail's menu changes have resolved his complaints regarding nutrition. While the Constitution requires that prisoners be served food that provides adequate nutrition,[54] Plaintiff Beckendorf's and Matthews' nutrition allegations do not give rise to a plausible claim. The food described by Plaintiff Matthews included three meals a day of items that appear to provide proper nutrition. Plaintiff Beckendorf did not allege any injury in his complaint or response statement from the food served, and Plaintiff Matthews only stated that he felt like he suffered some weight loss when he first arrived. The allegations, in light of the lack of injury, do not rise to the level of a constitutional violation that deprives Plaintiffs of the minimal civilized measure of life's necessities.[55] Thus, the claim for inadequate nutrition made by both Plaintiffs should be dismissed.

During Matthews' *Spears* hearing, he clarified that he had been seen for both his shoulder injury after the August 2021 incident and wrist injury after the March 2021 incident. His medical indifference complaint relates to the delay in care. Matthews further stated that his wrist injury was resolved, and he was diagnosed with a pinched nerve from the August 2021 incident, and was either awaiting x-ray results or to receive an x-ray.

A pretrial detainee alleging episodic acts or omissions condition of confinement claim under the Fourteenth Amendment must satisfy tests for both objective and subjective components of that claim; the same tests as a convicted inmate alleging an Eighth Amendment violation.[56] For

---

[54] *Logan v. Black*, No. 92-7328, 1993 WL 14454, at *2 (5th Cir. 1993) (citing *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)).
[55] *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998).
[56]*Desroche v. Strain*, 507 F. Supp. 2d 571, 579 (E.D. La. 2007) (citing *Farmer*, 511 U.S. at 847); *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)); *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (stating that for plaintiff to demonstrate an Eighth Amendment claim based on prison conditions, a plaintiff must show a sufficiently serious deprivation, and must show that the relevant official or officials

the objective component, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm" or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendant's actions.[57] "[E]xtreme deprivations are required to make out a conditions-of-confinement claim."[58] For the subjective component, the prison official must have acted with a sufficiently culpable state of mind.[59] A prison official's culpable state of mind is one of deliberate indifference, which is defined as knowingly disregarding an excessive risk to inmate health or safety.[60] The subjective component need not be examined if the plaintiff does not objectively demonstrate a sufficiently extreme deprivation of minimal civilized measure of life's necessities.[61]

The United States Supreme Court has addressed the question of alleged inadequate medical care in jails under the Eighth Amendment.[62] A prison official violates the Eighth Amendment when he shows deliberate indifference to a prisoner's serious medical needs, which equates to the "unnecessary and wanton infliction of pain."[63] To show a violation of the Eighth Amendment, the plaintiff must prove: (1) "objective exposure to a substantial risk of serious harm"; and (2) "that prison officials acted or failed to act with deliberate indifference to that risk."[64] To establish

---

acted with deliberate indifference to inmate health or safety); *see Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) ("Finding no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human rights . . . we conclude that a state jail official's constitutional liability to pretrial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference as enunciated by the Supreme Court in *Farmer*.").

[57] *Farmer*, 511 U.S. at 834.

[58] *Davis*, 157 F.3d at 1006 (citing *Hudson*, 503 U.S. at 9); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (requiring the inmate to allege a sufficiently serious deprivation, i.e., a denial of "the minimal civilized measure of life's necessities"); *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (stating that the alleged deprivation must be "objectively, sufficiently serious") (citing *Farmer*, 511 U.S. at 834).

[59] *Farmer*, 511 U.S. at 834; *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999).

[60] *Farmer*, 511 U.S. at 837 ("A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety.").

[61] *Davis*, 157 F.3d at 1006.

[62] *See Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994).

[63] *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

[64] *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006).

deliberate indifference, an inmate must show "that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[65]  A "serious medical need" is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."[66]

Plaintiff Matthews asserts inadequate medical care as he stated he was not seen for his wrist injury from the March 2021 incident until after the August 2021 incident, and also had to wait months after the August 2021 incident to be seen. By the *Spears* hearing in January 2022, Matthews had been seen for both his shoulder and his wrist.  He alleged no further facts during his *Spears* hearing regarding lack of adequate medical care.  Matthews fails to state facts which demonstrate his shoulder injury during those two months was such that it was so apparent a layman would recognize care is needed, or that the delay of two months for his shoulder to be seen resulted in substantial harm.  Further, the delay of seven to eight months for his wrist to be seen after the March 2021 incident could not have resulted in substantial harm as Matthews testified during the *Spears* hearing his injury was resolved.  Matthews alleges no facts demonstrating the two-month delay was due to deliberate indifference by any providers, despite testifying in almost an hour-long *Spears* hearing.  Thus, Matthews' claims of inadequate medical care should be dismissed.

As to the over 24-hour period that Matthews stated he was placed in a cell when he didn't receive a mattress or anything, he did not name any defendants related to this incident, outside of Sheriff Smith and Warden Fleischman who, as addressed earlier, cannot be found liable solely on

---

[65] *Tustin v. Livingston*, 766 F. App'x 174, 177 (5th Cir. 2019) (citing *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001))); *see also Farmer*, 511 U.S. 825 at 837 ("We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.") .

[66] *Gobert*, 463 F.3d at 345 n.12.

their positions as they had no personal involvement in any allegations in this case and Matthews alleges no policy that he contends is unconstitutional. Matthews does not allege that he was restricted from using the restroom, and does not allege any injury resulting from this 24-hour period of not receiving anything.

Under the Prison Litigation Reform Act, to recover compensatory damages, a prisoner must allege more than *de minimis* physical injury. Even if Plaintiff could state a constitutional violation, he would not be entitled to recover compensatory damages. The Prison Litigation Reform Act, 42 U.S.C. § 1997e, specifically provides that prisoners are barred from recovering compensatory damages for mental or emotional injuries "unless there is a prior showing of physical injury . . . ."[67] The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant.[68]

It is the nature of the relief sought, not the underlying substantive violation, that controls:[69]

A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise about [sic] de minimis, would . . . require more than the types and kinds of bruises and abrasions about which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).[70]

---

[67] 42 U.S.C. § 1997e(e); *Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir. 1997); *Crawford-el v. Britton*, 523 U.S. 574, 596 (1998).
[68] *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citing *Siglar*, 112 F.3d at 193).
[69] *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).
[70] *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997).

A plaintiff is not entitled to compensatory damages without the required physical injury.[71] Temporary pain is insufficient to satisfy this requirement.[72]

Here, Matthews has alleged no injury from the 24-hour period, and thus, would not be able to recover any compensatory damages even if his allegations would rise to the level of a constitutional violation. As Matthews did not allege any specific defendant that failed to provide him with food or bathroom during that time or any allegations of deliberate indifference on the part of any defendants, or any injuries that he sustained from this period of time, his conditions of confinement claim regarding the 24-hour period after the August 2021 incident should be dismissed as frivolous.

E. **Medical Privacy Claim by Plaintiffs Matthews and Beckendorf**

Plaintiff Matthews and Beckendorf both alleged telehealth visits (Matthews one, and Beckendorf two visits) in a hallway where the doctor proceeded with a medical visit and discussed health conditions of plaintiffs while other inmates and deputies could hear. Although prisoners have no absolute right in the privacy of their medical records, that does not mean that a prison has no right to recover when his medical information is released.[73] In addressing whether the disclosure of medical information is a constitutional violation, the Fifth Circuit has analyzed

---

[71] *See Siglar*, 112 F.3d at 193 (applying § 1997e(e)'s physical injury requirement to Eighth Amendment claims and holding that the statutory physical injury requirement is coextensive with Eighth Amendment's physical injury test; ruling that a sore and bruised ear lasting three days de minimis injury); *Alexander v. Tippah Cty.*, 351 F.3d 626, 627–31 (5th Cir. 2003) (holding that vomiting and nausea from exposure to build up of feces and urine in backed-up drain pipe they were forced to use was no more than a de minimis physical injury); *Herman v. Holiday*, 238 F.3d 660, 665–66 (5th Cir. 2001) (finding fear of contracting future illness from mosquito infested facility, insufficient hot water, cold food, unsanitary eating utensils, cesspool near residential entrance and failure to provide loaner clothes on laundry day cannot transform prisoner's claim for mental and emotional damages into an independent category of damages to avoid bar of § 1997e(e)'s requirement for physical injury); *Harper*, 174 F.3d at 719 (applying § 1997e(e)'s physical injury requirement to bar psychological damages absent allegation of more than de minimis physical injury in § 1983 claim alleging Eighth Amendment violation).

[72] *Sublet v. Million*, 451 F. App'x 458, 459 (5th Cir. 2011) (stating temporary pain stemming from numbness and tenderness in left hand and arm insufficient to establish more than *de minimis* injury).

[73] *Alfred v. Corrs. Copr. of Am.*, 437 Fed. App'x 281, 285 (5th Cir. 2011) ("The fact that there is not an absolute right to this privacy protection says nothing about whether there is, in fact, such a right in this particular case.').

whether the disclosure of information serves a legitimate penological interest.[74]  Further, the Fifth Circuit looks to whether the plaintiff's records were intentionally disclosed or if officials are fostering an atmosphere of disclosure with deliberate indifference to constitutional rights.[75] Neither Plaintiff Matthews' nor Plaintiff Beckendorf's allege deliberate indifference on the part of Dr. Lo who appears to be the treating physician during these appointments.  Matthews confirmed in his *Spears* hearing that he did not ask to be moved, and alleged only that two inmates and a deputy were down the hall during his visit.  No deliberate indifference is demonstrated in Dr. Lo as he was not physically present in the area as it was a telehealth visit, and neither Plaintiff told him they were uncomfortable.  Additionally, Matthews confirmed during the *Spears* hearing that medical visits are typically conducted in the medical room; therefore, this is not a usual policy at St. Tammany Parish Jail.  Due to the infrequency of telehealth visits, the lack of policy alleged by Plaintiffs (in fact, it was alleged that medical visits usually occur in the medical room), and the only named Defendant regarding this claim is Dr. Lo, Plaintiffs' medical privacy claims should be dismissed as frivolous.

## IV.    <u>Other Claims</u>

Plaintiff Matthews also states that his property - a wedding ring and family photos and personal art - were taken by officers during cell searches in March 2021 and August 2021.  The random and unauthorized deprivation of a prisoner's property by a state actor does not violate the prisoner's due process rights if the state provides an adequate post-deprivation remedy.[76]  "[N]o

---

[74] *Id.* (citing *Moore v. Mabus*, 976 F.2d 268, 271 (5th Cir. 1992);  Powell v. Schriver, 175 F.3d 107, 112–13 (2d Cir. 1999), 175 F.3d at 112 (noting that a regulation that impinges on constitutional rights is only valid if it has a penological interest and that gratuitous disclosure for purposes of humor or gossip is not reasonably related to a penological interest); *Doe v. Delie,* 257 F.3d 309, 317 (3d Cir.2001); *Moore v. Prevo,* 379 Fed.Appx. 425, 427–28 (6th Cir.2010) (holding that inmates have a "Fourteenth Amendment privacy interest in guarding against disclosure of sensitive medical information from other inmates subject to legitimate penological interests")).
[75] *Id.* at 285.
[76] *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams,* 474 U.S. 327, 330-31 (1986).

constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct."[77]  An adequate post-deprivation remedy exists when an inmate can file a tort suit in state court for compensation for or recovery of his property, a remedy which is available in Louisiana.[78]  As to the photos and art taken, this allegation does not rise to the level of any constitutional violation, and loss of property would be appropriately a tort claim in state court.  As to the wedding ring, while that also would be appropriately filed as a tort claim in state court, Plaintiff Matthews stated that he received a receipt for this wedding band, which the St. Tammany Parish Jail views as contraband.  Additionally, Matthews does not name any defendants regarding stolen property, except Officer Brumfield who gave him a receipt for the wedding ring. Therefore, he has no claims for stolen property, and any such claims are appropriately filed as state tort claims.

Plaintiff Matthews and Beckendorf also filed suit against Deputy Brumfield and Corporal Smith for responding to grievance complaints.  Responding to a grievance complaint is not a constitutional violation, and any such claim against Brumfield or Smith should be dismissed as frivolous.

## V.    CONCLUSION

Plaintiff Beckendorf's claims of nutrition and lack of medical privacy should both be dismissed with prejudice for failure to state a claim.  He fails to identify how his meals were deficient and the allegations indicates the receipt of vitamins and three meals a day.  Further, the

---

[77] *Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987); *see also Hudson*, 486 U.S. at 533; *Daniels*, 474 U.S. at 330-31; *White v. Epps*, 411 F. App'x 731 (5th Cir. 2011).
[78] *Hernandez v. Egwe*, 840 F. App'x 797, 798 (5th Cir. 2021) (citing *Sheppard v. Louisiana Bd. of Parole*, 873 F.2d 761, 763 (5th Cir. 1989)).

several telehealth visits held in the hallway do not indicate deliberate indifference or a policy of releasing Plaintiffs' medical information to other inmates.

Matthews' similar claims for nutrition and medical privacy fail for similar reasons. As to Matthews' remaining claims, only his claims for excessive force on March 2021 and August 2021 survive against Sgt. Cabbin, Deputy Boyet, Deputy Spohrer, and Deputy Martinez as he has alleged sufficient facts to state a plausible claim for relief as to physical force that was applied by these Defendants to him while he was allegedly restrained and not resisting. This force included being tazed, slammed into a door then ground, and having his arms, including an injured shoulder which he communicated, hyperextended over this head while he stated it was hurting him. As to other conditions of confinement claim or inadequate medical care claim, Matthews does not allege facts to demonstrate an extreme deprivation or deliberate indifference on the part of any Defendants. Additionally, he does not alleged a more than *de minimis* injury resulting from these allegations. Therefore, those claims should be dismissed.

## ORDER AND RECOMMENDATIONS

 For the foregoing reasons,

**IT IS RECOMMENDED** that any § 1983 claim in this matter against Sheriff Randy Smith, Warden Daniel Fleischman, Deputy Aaron Mendow, and Dr. Jose Ham for their supervisory role be DISMISSED WITH PREJUDICE for failure to state a claim for lack of personal involvement or alleged unconstitutional policy.

**IT IS FURTHER RECOMMENDED** that Plaintiffs Beckendorf's and Mathews' § 1983 claim for inadequate nutrition be DISMISSED WITH PREJUDICE.

**IT IS FURTHER RECOMMENDED** that Plaintiffs' Matthews claims for inadequate medical care after the March and August 2021 alleged excessive force incidents and conditions of

confinement claim for a 24-hour period in August 2021 be DISMISSED WITH PREJUDICE for failure to allege sufficient facts to extreme deprivation, deliberate indifference, and/or more than *de minimis* injury.

**IT IS FURTHER RECOMMENDED** that Plaintiffs' Matthews' and Beckendorf's claims of violation of medical privacy during telehealth visit be DISMISSED WITH PREJUDICE as frivolous.

**IT IS FURTHER RECOMMENDED** that all other named Defendants, Deputy Adrian Brumfield, Sgt. Dussouy, and Corporal J. Smith be DISMISSED WITH PREJUDICE as frivolous for lack of alleged facts to state any constitutional claim.

**IT IS FURTHER RECOMMENDED** that Defendants Lo and Ham's Motion to Dismiss (ECF No. 18) be GRANTED.

**IT IS FURTHER RECOMMENDED** that Plaintiff Matthews' claim for excessive force for March 2021 and August 2021 incidents against Deputy Boyet, Deputy Spohrer, Sgt. Cabbin, and Deputy Martinez be allowed to proceed as Matthews has stated sufficient facts demonstrating a plausible claim for relief.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[79]

---

[79] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)).  *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).

New Orleans, Louisiana, this 23rd day of August, 2022.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE